Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is... Excuse me, Your Honor. Let's try that again. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is 19-1382, Chin v. United States Sports Academy, Inc. Thank you. Mr. Holinski? Yes, good morning, Your Honor. And Your Honor, this man who leads the court. My name is Stanley Holinski. I appear on behalf of Mr. Chin, the plaintiff in this action brought initially from the Commonwealth of Massachusetts. Superior court transferred here by diversity. My biggest issue, I mean, I think the strongest issue here, clearly Mr. Chin asked Your Honor to reverse the dismissal of this matter in the US judicial court, return it to an active docket. I think the best argument for that is the nature of the proceeding. We're going to know from here today that this district court relied on, you know, if we convert this to a summary judgment record, even in the inadequate record, that this is a 12B6 proceeding, which relied on the pleadings that we all know very well. Counsel, excuse me, it's not a 12B6 proceeding. It's a 12B2 motion. Yes. And in a 12B2 motion, the court is entitled to rely on a properly filed affidavit. Yes, I'm sorry. Okay. Yes, I've done enough of these, the 12B6 seems to come out very often. The 12B2, yes, on an affidavit. But to me, that is the most problematic because we have not had a chance to explore the underpinnings of those facts. But, Counsel, you did have an opportunity to ask the district court for leave to do jurisdictional discovery before it ruled on the motion to dismiss. There was no such request made. That's correct, Your Honor. That is, in my view, not a bar to this argument, the argument that's before the court. That being said... Well, why isn't it a bar? Well, I don't think, availing yourself, a party availing itself of all, you know, it's not as like an administrative proceeding, availing oneself of all administrative remedy issues. That the case law is the case law. The law is the law. If we are to look at the facts that are before the record that is before this court and what was before the district court, the trial court, it does not support the decision to dismiss this matter as it has been done. Why not? I'm sorry? Why not? What evidence is there in the record of the requisite minimum contacts? So, the evidence I think is overwhelming. You know, we have, as I've argued, we have, you know, this is a very poignant point in time because we have so much social media and we have so much, you know, internet activity for the first time in many, many, forever. So these present very novel legal arguments, but, you know, the difference between a passive and an interactive website, the numbers of distinctions between those, as I mentioned, a restaurant website or gym website versus an interactive website. Interactive websites going to touch everything, especially where you're talking about a medically licensed individual, including the licensure banks, Massachusetts banks. Is your argument essentially that the mere existence of an interactive website that can be accessed in any of the 50 states is enough to confer a jurisdiction in any one of those states? No, Your Honor. What other contacts do we have here other than the mere fact that there was an interactive website? Well, we don't have an interactive website such as Westlaw. You know, we don't have something that's a database where we can go online and just search and that's an interactive website. We have this party reaching out to Massachusetts. Excuse me. What evidence is there of reaching out or targeting other than the existence of the website itself? Well, there's an admission in the affidavit that at the time of the pleading, this company had active students in Massachusetts. Well, in your theory then, once there is a website which can be as interactive as this one, in effect, there is personal jurisdiction in every jurisdiction which the website reaches. Yes. Yes. Particularly in this case because, you know, you're talking about fees being, I mean, think about the implications of when, you know, somebody who is medically licensed and offers a medical degree, you've got licensing authorities, you've got regulatory authorities, you've got end users who are going to go to the website to check out the doctor that they're going to go to, you know, to evaluate that doctor, use the same website. You've got retail industry where you have to go and buy a computer and, you know, you can't avail yourself of these services unless you buy a computer and buy Internet service. You've got in Massachusetts, you've got servicing in case something goes down, somebody has to come to your house and fix it in order to access this online system. You've got e-mail, you've got e-mail servers back and forth. You've got, you're paying them. You've got your bank in Massachusetts that's dealing with this out-of-state enterprise. Now, I'm not saying any one of these individual factors is enough to confer minimum contacts to establish jurisdiction. Taken together, though, this is more than Westlaw. What if someone accesses your website from California and you have some, as many websites do now, some interactive component? Is there jurisdiction to sue you in California? Sure. I mean, look at, you know, I hate to bring up Twitter, but, you know, Twitter or Facebook, you know, these social media platforms that have jurisdiction throughout the 50 states. How is this different? I think this is even on a higher level. So, essentially you're saying if you assume that most companies and most individuals are going to have a presence on the Internet that can be accessed from anywhere in the world, you seem to be pretty close to saying that any company for any transaction can be sued in any state in the United States? So, no. Then what would be the distinguishing factor? I see. Once they have an interactive website that is accessed from that state by several people, everything you say could be said. That's the analysis of the sliding scale. I think that is, I agree with that analysis. I think that this is so complex that I agree with your honor that who has jurisdiction and who doesn't? Who are we going to bring to the state and who aren't we going to bring to the state? And the sliding scale reaches that. The sliding scale, you know, this is a totality of the circumstances situation. This is where we need to look, and I argue to you that this is the very kind, when a company is reaching out to Massachusetts. I don't understand what the company has done to reach out, what the company has done other than to establish the website. What the company has done is not so much reach, so I wouldn't suggest it's the reaching out portion. Well, that's the phrase you just used. So, if I misspoke, it's not the reaching out portion, it's the complicity. It's the once you reach out and somebody says, somebody in Korea, somebody in Massachusetts, says, hey, you know, I see a website here. I see that you offer degrees that will be recognized in Massachusetts. Can I sit in my home in Massachusetts and earn my degree from Massachusetts? The answer being yes is when jurisdiction should attach in this situation. It's not the reaching out. It's the acceptance. Well, are you in effect saying that what is significant here is not so much, apart from the establishment of the website, is not so much what happened before the individual came back and said, you know, I want to get going again on my degree and I'm now living in Massachusetts. Are you saying that his attempt, in effect, to re-enroll after he had moved to Massachusetts is what entails personal jurisdiction, not what happened before that? Well, you know, to answer your question, first, there are other students there. There are other students admitted by the defendant in Massachusetts. And also, I don't believe it's the subjective facts that relate simply to my client that matter. To answer your question, it is as soon as a company such as this says, I know you're in Massachusetts. You can complete your degree in Massachusetts without coming back to the state. You have jurisdiction. You've just entered the state. You've entered the commonwealth. Thank you, Counsel. Yes, thank you, Your Honors. Good morning, Your Honors. In the Office of the Court, my name is Bethany Minnick. I'm here on behalf of the Defendant Athlete of the United States Sports Academy, Inc. Touching on some of the issues that Your Honors have addressed here today, while technology has certainly altered the landscape in terms of how the courts are required to look at jurisdiction, the courts have also made it clear that jurisdiction cannot be eviscerated and that states cannot simply come in and grab any act or any business that has a website or an Internet presence. The fact that the United States Sports Academy has an interactive website to some degree does not confer general jurisdiction in this matter. You would ask counsel on several occasions what it is that the United States Sports Academy specifically did to draw in students or to reach into Massachusetts, and the facts are that they did nothing. They had a website that is interactive that allows for people in all of the states to access it to gain information. And while foreseeable that a student or a participant might go on there and fill out an application or even enroll in the program is not sufficient to allow for this court to put general jurisdiction over the United States Sports Academy here in Massachusetts. What's at issue here is the contract claim. And that contract arose out of a relationship that occurred in Alabama in 2008 and 2010. We have a breach of contract claim here. The mere presence of an Internet website in Massachusetts is not what gives rise to the contract claim. The contract claim arises out of the enrollment file in Alabama pursuant to the terms of the agreement the parties entered into at that time. With respect to specific jurisdiction, the test that my brother speaks to, the sliding scale that was identified in ZIPA, while not specifically adopted by this court, it certainly has been examined at length. And that scale talks about the passive ends of it and also the more specific ends where there is further interactivity between the parties in different states. And here we don't have a situation where there is a significant amount of interactivity between the parties. We have a website that the plaintiff utilized while in Alabama for a period of about two years, and then he disappeared. We didn't hear from him for a period of roughly six years, at which time he made an isolated unilateral contact with Massachusetts. And if you look at the complaint, there are suggestions of, I think, three different conversations that this individual had with the United States Courts Academy from Massachusetts. Nowhere in the complaint does he identify that he said he was in Massachusetts at the time, that he informed them of his move to Massachusetts from Alabama or from some other state. And the court has to look beyond the website. So taking that passive scale, all of the cases say that it is not just the presence of a website that could be accessed in another state. But you have to look beyond that and look at purposeful availment. And I suggest to you that the facts in this case demonstrate that there was no purposeful availment by the United States Sports Academy relative to Mr. Chen or anyone else for that matter. My brother has identified that there were two other students, which we have put in our affidavit, who at the time of the filing were enrolled in a single course in Massachusetts. There's no evidence that these students received any advertisements from the United States Sports Academy that the Sports Academy solicited their business. Certainly no evidence that the plaintiff's business was solicited or that the United States Sports Academy came to him and asked him to enroll in their institution. The evidence is that he went to Alabama. He enrolled in the school. He was in Alabama for two years where they're located, where they're incorporated, where their offices are. And then he took courses. All of the 48 required credits he took in Alabama. And then at some point he left the jurisdiction. Didn't inform the United States Sports Academy of it. Didn't re-enroll as some of the other cases talk about. For example, in the case of, if I'm going to pronounce this incorrectly, Lativi versus Walden University, there the individual left the state where they had originally enrolled. And they then re-enrolled in another state, letting the institution know that they had re-enrolled in that university. The institution maintained contact with them, knowing that they were in another state. They had other students that were also enrolled in that state. They targeted those students. They advertised to them. They had pre-enrollment workshops. There was sufficient evidence in that case, not for general jurisdiction, but the court found that there was sufficient evidence for specific jurisdiction because beyond having an interactive website, there were other purposeful availments that allowed for the invocation of specific jurisdiction. Also in the case of Parro versus Grand Canyon, which my brother cites too, there again, specific jurisdiction, not because of the presence of an interactive website, but because they actively recruited over 1,000 students. They contacted and spoke to 1,000 students on a regular basis with respect to their program studies. They had had conversations directly with the plaintiff in that case about her course of study. So again, very different facts from the facts we have here today. In our jurisdiction, there was the case of Chase versus GIST, and there was no jurisdiction, general or specific, for very similar facts to what we have here today, which is that while there may have been a website and there was a website, there was no advertising, no solicitation for business, no pre-enrollment screenings or fairs that they attended. Same facts here. United States Sports Academy does not come into Massachusetts. They don't hold school fairs or come in and try to post ads in schools to solicit business. They don't advertise here. They have no office here in Massachusetts, no telephone number. They don't pay taxes here. There's no evidence whatsoever that they solicited any business here in Massachusetts purposely. With respect to the e-mail communications, again, those are general responses to inquiries made by the plaintiff. They were unilateral. The plaintiff solicited that information from them regarding the course of study and his program, which again goes back to 2010 when you leave the complaint. He says that he entered into this arrangement with them to change his course from a comprehensive examination to a portfolio, again, an activity that took place in 2010 in Alabama, not in Massachusetts. So for these reasons and the reasons that my brother waived in the underlying case, his ability to conduct pre-discovery or jurisdictional discovery relative to these facts that we've talked about here today, there is no evidence of general or specific jurisdiction that would allow for this court to bring the United States Sports Academy into Massachusetts for this litigation. And for that reason, I ask that you affirm the district court's decision. Thank you.